UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Joshua A, a minor, by and through Jorge A., his guardian *ad litem*,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Rocklin Unified School District, and Does 1-25<br><br>　　　　Defendants. | CV 07-01057 LEW(KJMx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR STAY PUT ORDER & DENYING PLAINTIFF'S REQUEST FOR REIMBURSEMENT**<br>**ORDER GRANTING DEFENDANT'S REQUEST FOR JUDICIAL NOTICE** |

Plaintiff's Motion for Stay Put Order came on regularly for hearing on Friday August 17, 2007. The Court also issued a ruling on Plaintiff's Request for Reimbursement and Defendant's Request for Judicial Notice.

The Court has considered all of the papers and argument submitted on the matters and **THE COURT NOW FINDS AND RULES AS FOLLOWS:**

1

A.  **Preliminary Issue - Judicial Notice**

In Defendant's Opposition Requests that this Court take judicial notice of the following:

(1) OAH Order Denying Motion for Stay Put, OAH Case No. N200609663, by Administrative Law Judge Suzanne Brown, dated October 16, 2006.

(2) OAH Decision, OAH Case No. N2006110278, by Administrative Law Judge Gary A. Geren, dated May 25, 2007;

(3) Amicus Brief filed by the United States Department of Education, in the Seventh Circuit case of <u>John M. v. Board of Education of Evanston Township High School District</u>, 2007 WL 1571154, dated May 21, 2007; and

(4) Letter to *Rieser* decision by the United States Department of Education's Office of Special Education Programs, 211 IDELR 403 (July 17, 1986).

Finding that these documents are all capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, the Court hereby **GRANTS** Defendant's Request for Judicial Notice.

## I.  INTRODUCTION

Joshua A. ("Plaintiff") a six year-old boy diagnosed with autism, has been receiving special education services pursuant to the parties last agreed upon Individual

Educational Plan ("IEP"), dated October 14, 2005.  Since that date, the special education services have been provided through Therapeutic Pathways, Inc. a non-public agency ("NPA") and partially financed through Rocklin Unified School District ("Defendant").

Defendant attempted to alter Plaintiff's educational placement and substitute the non-public agency services for public agency services beginning February, 2005. However, Plaintiff has consistently refused, stating that the proposed changes will not adequately address Plaintiff's educational needs.

In November 2006, Defendant sought administrative review to determine whether the elimination of Therapeutic Pathways' services and placement into public school would be a violation of the FAPE provisions.  After a nine day hearing in March 2007, the ALJ held that Defendant was able to place Plaintiff in public school without violating FAPE.

On June 23, 2007, Plaintiff filed an appeal with this Court seeking a *de novo* review of the ALJ's decision.  That matter is still pending.

On July 10, 2007, Defendant informed Plaintiff that Defendant would be changing the special education service provider from Therapeutic Pathways to an unspecified NPA provider as of August 1, 2007.  [See Pl. Ex. 11].

On July 19, 2007, Plaintiff filed the instant motion under 20 U.S.C. § 1415(j) to prevent Defendant from altering Plaintiff's educational services through Therapeutic Pathways until the completion of the appeal process. Plaintiff also seeks reimbursement for costs incurred as a result of Defendant's August 1, 2007 refusal to pay for Plaintiff's services through Therapeutic Pathways.

### III.  DISCUSSION

A.  <u>This Court has Jurisdiction Over Instant Matter</u>

District Courts have jurisdiction to hear claims brought under the IDIEA. <u>20 U.S.C.S. § 1415 *et. seq*</u>. This jurisdictional right includes the right to issue Stay Put Orders. Therefore, the instant matter is properly before the Court.

B.  <u>Plaintiff is Entitled to A Stay Put Order</u>

The unequivocal language of <u>1415(j)</u>, expresses Congress' intent to ensure that a student's special education services remained constant during the pendency of any appellate process. <u>See Honig v. Doe</u>, 484 U.S. 305, 329,(1988).

Plaintiff is seeking an original Stay Put Order and not attempting to alter an existing Stay Put Order, therefore,

4

it unnecessary for Plaintiff to meet the traditional preliminary injunction standards.  20 U.S.C.A. § 1415(j)[1]; See also Honig, 484 U.S. at 333 ([i]n any suit brought by parents seeking injunctive relief for a violation of § [1415(j)], the burden rests with the school district to demonstrate that the educational status quo must be altered.").

Defendant asserts that the Court should follow the holding of Johnson v. Special Educ. Hearing Office, 287 F.3d 1176 (9th Cir. 2002).  However, even Defendant concedes that factually and procedurally distinguishable from the instant matter.  The Johnson Court held that when a party seeks to *enjoin* a preexisting Stay Put Order, that party must meet the traditional preliminary injunction standards.  Id. at 1180.  The Johnson Court also recognized that other Circuits apply an automatic injunction standard to stay put orders, and distinguished those cases on procedural grounds only. Id. (citing Zvi D. v. Ambach, 694 F.2d 904, 906 (2d Cir. 1982; and Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 (3d Cir. 1996)).  Thus, this Court's ruling does not

---

[1] During the pendency of any proceedings initiated under the Act, unless the state or local educational agency and the parents or guardian of a disabled child otherwise agree, "the child *shall* remain in the then current educational placement." 20 U.S.C.S § 1415(j)(emphasis added).

5

conflict with <u>Johnson</u>.

Therefore, as Plaintiff is seeking an original Stay Put Order, the Order is issued automatically.

B.   <u>Therapeutic Pathways' Services Must be Included In Plaintiff's Stay Put Order</u>

The purpose of the stay put provision is to maintain the status quo and to prevent school districts from unilaterally denying placement to a student while a dispute over the placement is being resolved. <u>Honig</u>, 484 U.S. at 326; <u>see also</u> <u>Van Scoy v. San Luis Coastal Unified Sch. Dist.</u>, 353 F. Supp. 2d 1083, 1086 (C.D. Cal. 2005). The stay put requirement should allow the student to maintain the status quo, to the extent possible, until the finality of the student's placement has been reached. <u>Johnson</u>, 287 F.3d at 1180. This will ensure that the student's education remains continuous.

In the instant matter, Plaintiff's current educational placement is clearly ascertainable. He is, and has been, receiving special education services from the same provider for more than two years.

Under the strict interpretation of §1415(j), Plaintiff's "current educational placement" is not credibly in question. Defendant, however, citing several OAH

decisions, asserts that legal precedent demands this Court determine the "then current educational placement" through an examination of the IEP. [Def. Opp. at 7-8]. Even assuming that Defendant's assertion is correct, Therapeutic Pathways would still be required under the Stay Put Order.

Where controversy arises regarding the physical component of an order to stay put, the Ninth Circuit looks to the individualized education program ("IEP"), to determine the "then current educational placement." Johnson, 287 F.3d at 1180; Ms. S v. Vashon Island Sch. Dist., 337 F.3d 1115, 1133 (9th Cir. 2003).

Defendant maintains Therapeutic Pathways is not required by the IEP because Therapeutic Pathways is not specified as the non-public agency, therefore Defendant's obligation is limited only to providing the services of a non-public agency. [Def. Opp. at 7].

Defendant reaches this conclusion through the examination of the single "IEP Services" page of the IEP document. [Def. Opp. at 10]. However, 20 U.S.C.S. § 1414(d) controls and enumerates multiple categories of information that are not included on the single page Defendant references. Id.

After examination of the entire IEP, the Court is satisfied that IEP does make reference to the services

7

provided by Therapeutic Pathways. Indeed, the IEP lists Therapeutic Pathways under "IEP Agency Linkages". [Pl. Ex. 1, page 5]. Further, given the intent of the entire statutory scheme, this Court cannot simply ignore the entirety of the evidence before it, as Defendant requests. For example, Therapeutic Pathways participated in the October 15, 2005 IEP meeting and handwritten notes taken at that meeting indicate that Therapeutic Pathways will be providing Plaintiff with special education services. [Pl. Ex. 1].

Therefore, while the Court does not find it necessary to examine the IEP to reach its conclusion, examination of the IEP supports the conclusion that Plaintiff's Stay Put Order includes the services of Therapeutic Pathways.

Defendant maintains that changing service providers would not alter the status quo because Plaintiff would still be receiving the same treatment at home through a non-public service provider. [Def. Opp. at 13-14]. This argument is unpersuasive. First, the plain language of the statute requires Plaintiff to remain in his "then current educational placement." Altering the NPA would require Plaintiff to change from one program to another, with different staffing, facilities and knowledge of Plaintiff's specific disability. This disruption appears to be exactly what Congress intended to avoid through §1415(j).

1     Defendant is accurate that Plaintiff is not inherently
2 entitled to *identical services* where those services are no
3 longer possible or practicable. [Def. Opp. at 8-13. <u>See,
4 e.g. Ms. S. ex rel. G v. Vashon Island Sch. Dist</u>., 337 F.3d
5 1115, 1133 (9th Cir. 2003) (upholding a School District's
6 placement of a transfer student because the school attempted
7 to comply with the most recent IEP.)("Although the
8 'stay-put' provision is meant to preserve the status quo, we
9 recognize that when a student transfers educational
10 jurisdictions, the status quo no longer exists. . . . the
11 new district must implement the last agreed-upon IEP 'to the
12 extent possible.'") <u>Id</u>.

14    <u>Ms. S.</u> is distinguishable from the instant case because
15 identical services are available, and Plaintiff has not
16 changed circumstance such that a change in service providers
17 would be warranted.

19    Indeed, each case relied on by Defendant is
20 distinguishable for the same reason - those cases addressed
21 a change in circumstances necessitating an alteration from
22 the literal "current educational placement."

24    Moreover, unlike each case cited by Defendant, there
25 has been no review into whether the yet unidentified non-
26 public agency proposed by Defendant would comply with the
27 IEP or would provide adequate services.  Defendant has yet
28 to present any evidence regarding the proposed NPA or any

9

justification for changing service providers. Even the cases cited by Defendant, demand that the substitution comply with the IEP.

The Court recognizes that School Districts must have the ability to contract with service providers, however, where Congress fails to make an exception, it is not within the jurisdiction of this Court to make one.

Should the Defendant wish to alter the Stay Put Order, it could do so by complying with the rules set out in <u>Johnson</u> and meet the traditional preliminary injunction standards. Defendant has failed to do that.

Based on the above analysis, Plaintiff's Motion for Stay Put Order is **GRANTED**.

C.   <u>Plaintiff is Not Currently Entitled to Reimbursement</u>

Plaintiff seeks reimbursement for costs incurred as a result of refusing to consent to Defendant's alternate placement and continuing to pay out of pocket for Therapeutic Pathways. Parents may be entitled to reimbursement for the costs of placement or services they have procured for their child when: (1) the school district failed to provide a FAPE; and (2) the private placement or services procured are (a) proper under IDEA and (b) reasonably calculated to provide educational benefit to the

child.  20 U.S.C.S. §1412; see also Sch. Committee of Burlington v. Dept. of Educ., 471 U.S. 359, 369 (1985); Glendale Unified Sch. Dist. V. Almasi, 122 F. Supp. 2d 1093, 1105 (9th Cir. 2000); Student W. v. Puyallup Sch. Dist., 31 F.3d 1489, 1496 (9th Cir. 1994).

Plaintiff cited no authority, nor does there appear to be any, that would entitle Plaintiff to reimbursement prior to the determination of a FAPE violation.

Here, there has been no determination that Defendant violated FAPE.  Indeed, that issue is before the Court on appeal.  Therefore, this issue is not ripe for determination.

Plaintiff's Request for reimbursement is hereby **DENIED**.

### IV. CONCLUSION

In accordance with the above ruling, Defendant is hereby ORDERED to Reinstate the services provided to Plaintiff prior to August 1, 2007.

**IT IS SO ORDERED.**

_____
HONORABLE RONALD S.W. LEW
Senior, U. S. District Court Judge

DATED: August 17, 2007

11